# SUPREME COURT.

## Wyman agt. Hart.

Where the circuit judge left it to the jury to say whether the *sale* (of goods on execution, issued upon a judgment on confession) was in *good faith*, and not to hinder or delay creditors; and it was urged, on a .general exception to the charge of the judge, that he should have said to the jury, "not to hinder, delay, or *defraud* creditors,"

*Held*, that if the sale was made in good faith, it could not have been to *defraud creditors*. Besides, the exception taken on the trial was too indefinite; it should have specified distinctly that the judge was requested, and refused so to charge.

Where it was urged that the sale was fraudulent, because the property was put up in but few parcels, and it appeared that the sheriff exercised his own judgment in that respect, and there did not appear to be any collusion between the plaintiff and defendant in the execution as to the manner of sale,

*Held*, that if the defendant caused the sale to be conducted fraudulently, the plaintiff in the execution should not be held responsible for it. They are adverse parties, and one cannot be affected by the fraud of the other, if he takes no part in it.

*New-York General Term, Jan.,* 1855.

*Before* Mitchell, Roosevelt and Clerke, *Justices.*

This is an action of replevin, brought against the defendant, for taking goods alleged to belong to the plaintiff, from the possession of one Flandrow.

In November, 1842, Wyman recovered a judgment against Flandrow by confession, on bond and warrant of attorney. In December following, an execution was issued, and the entire contents of a thread and needle store of Flandrow's was levied on. In January the goods were sold; they were bought in by Wyman's agent, for $395; their original cost was over $1,000. In May following, Flandrow removed to Grand-street; hired a store in his own name, and put up his signs with the word *agent* on them, in very small letters where the painter usually puts his name.

In November, 1843, Martha Durando recovered a judgment

against Flandrow, and issued execution; and in December following, Mr. Hart, the sheriff, levied on the property in Flandrow's store, about one-half of which was the same as that previously sold to Wyman, at the Bowery store. Wyman then brought this suit in replevin; and verdict was rendered for him, the jury assessing the value of the property at $700. The defendant appealed upon exceptions to the ruling of the court,

CHARLES A. PEABODY, *for plaintiff.*
HORTON H. BURLOCK, *for defendant.*

MITCHELL, Justice. The defendant having levied on goods which once belonged to Flandrow, and had been previously sold under execution to the plaintiff, defended himself in an action for taking the goods, on the ground that the sale to the plaintiff was fraudulent.

The defendant, without objection, allowed Brigham to testify that Wyman had called on him, and requested him to sell goods, and that Flandrow would call and pick them out; and then, on cross-examination, brought out also what Wyman said when the credit expired on the sale, viz., that Flandrow was to pay out of the store. The judge then asked what Wyman said when he called on the witness at the time above stated, and the witness answered, that Wyman said he had assumed the business of the store to secure himself for liability incurred in settling Flandrow's debts. The defendant excepted to this last question. It may be that it was admissible to explain the previous testimony which was not objected to, and as to which there was a cross-examination; but, whether admissible or not, the defendant himself proved nearly the same facts by another witness, W. A. Douglass, who says that "Wyman said that Flandrow was his agent, and that he (Wyman) had purchased the property to help Flandrow along; and that Flandrow was to receive a certain amount for his trouble."

The exception, therefore, should not be sustained. The judge left to the jury the question, whether the sale was in *good faith,* and not to hinder or delay creditors; and the de-

Wyman agt. Hart.

fendant excepts to this, that the judge should have said, not to hinder, delay, or *defraud* creditors. If the sale was in good faith, it could not have been to *defraud* creditors; and if it was desired that the question of *fraud* should be brought more distinctly before the jury, a general exception was too indefinite— the omission of the word " defraud " should have been specified.

It was urged by the defendant, that there was fraud in the sale on the execution, because the property was put up in but few parcels. It was shown that it was so put up by the sheriff of his own judgment and will; and that Wyman did not attend the sale, but had requested Flandrow to procure Sinclair to attend the sale, and buy the goods if they went below their value, and that Sinclair did so attend.

The judge charged that Sinclair, under this authority, was the plaintiff's agent only to buy for him, and not for the purpose of directing the manner of the sale, and that Wyman was not accountable for any fraudulent act of Flandrow at the sale authorized by Wyman.

It certainly would be a dangerous doctrine to lay down, that if a defendant in an execution caused the sale to be conducted fraudulently, the plaintiff in the execution should be responsible for it. If there were evidence of connivance between the two, the one would be responsible for the acts of the other— but otherwise they are adverse parties; and one cannot be affected by the fraud of the other, if he takes no part in it.

The authority of Sinclair was limited to buying for the plaintiff, and, as the judge correctly charged, gave him no control over the conducting of the sale.

New trial denied, with costs.

ROOSEVELT, J., on the facts as to a fraudulent sale, *dissented.*